# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| MARISA D. PAGANO,<br><br>    Petitioner,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    Defendant, | Case No.: 4:17-cv-00395-BLW<br><br>**MEMORANDUM DECISION & ORDER** |

Pending before the Court is Petitioner Marisa D. Pagano's Complaint/Petition for Review (Dkt. 2), seeking review of the Social Security Administration's decision denying her application for disability insurance benefits under Title II of the Social Security Act for lack of disability. *See generally* Compl./Pet. for Review (Dkt. 2). This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following decision:

## I. ADMINISTRATIVE PROCEEDINGS

On August 8, 2013, Petitioner Marisa D. Pagano ("Petitioner") filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning November 5, 2012 (later amended to July 15, 2013). The claim was denied on November 27, 2013 and, again, on reconsideration on May 30, 2014. On June 3, 2014, Petitioner timely filed a Request for Hearing. On February 11, 2016, Administrative Law Judge Larry Kennedy held a video hearing from Seattle, Washington, at which time Petitioner, represented by her then-attorney Jeffrey Ratliff (Petitioner is now *pro se*), appeared and testified from Kennewick, Washington. Impartial vocational expert, Michael W. Swanson, also appeared and testified.

**MEMORANDUM DECISION & ORDER - 1**

On May 16, 2016, the ALJ issued a Decision denying Petitioner's claim, finding that she was not disabled within the meaning of the Social Security Act. Petitioner timely requested a review from the Appeals Council and, on July 18, 2017, the Appeals Council denied Petitioner's Request for Review, making final the ALJ's decision.

Having exhausted her administrative remedies, Petitioner timely filed the instant action, arguing that the ALJ's findings were not supported by substantial evidence in the record because "medical evidence showed and states that [she] [has] been unable to work due to multiple autoimmune diseases that have been unresponsive to medication along with mental health issues." Compl./Pet. for Review, p. 3 (Dkt. 2); *see also generally* Pet.'s Brief ISO Pet. for Review (Dkt. 16). In this respect, Petitioner's briefing is broad and encompassing, representing a hodgepodge of arguments that generally attack certain of the ALJ's conclusions (and even observations) at various steps of the sequential process and, naturally, the ALJ's ultimate conclusion that Petitioner is not disabled. Suffice it to say, the overall balance of Petitioner's arguments reflect claims that (1) the ALJ failed to properly develop the medical evidence in the record, (2) the ALJ failed to recognize the totality of Petitioner's impairments, and (3) the ALJ improperly evaluated the medical opinion evidence. *See* Pet.'s Brief, pp. 2-7 (Dkt. 16). Petitioner therefore requests that the Court either reverse the ALJ's Decision and find that she is entitled to disability benefits or, alternatively, remand the case for further proceedings and award attorneys' fees. *See* Compl./Pet. for Review, at p. 3 (Dkt. 2).

## II. **STANDARD OF REVIEW**

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. *See* 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. *See* 42

U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

As to questions of fact, the Court's role is to review the record as a whole to determine whether it contains evidence allowing a reasonable mind to accept the conclusions reached by the ALJ. *See Richardson*, 402 U.S. at 401. The ALJ is responsible for determining credibility and resolving conflicts within the medical testimony (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving any ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence contained in the record (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). Where the evidence is susceptible to more than one rational interpretation, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *See Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

As to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *See Matney*, 981 F.2d at 1019. At the same time, the ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id.* However, reviewing federal courts "will not rubber-stamp an administrative decision that

**MEMORANDUM DECISION & ORDER - 3**

is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *See Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## III. DISCUSSION

### A. Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. *See* 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. *See* 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner "has not engaged in substantial gainful activity since July 15, 2013, the amended alleged onset date." (AR 23).

The second step requires a determination of whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. *See* 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of

**MEMORANDUM DECISION & ORDER - 4**

impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. *See* 20 C.F.R. §§ 404.1521, 416.921. If there is no severe medically determinable impairment or combination of impairments, benefits are denied. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner has the following severe impairments: "rheumatoid arthritis; syrinx of the spine; right carpal tunnel syndrome; headaches; infraspinatus tendon tear of the right shoulder; [and] hypothyroidism." (AR 23).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See id.* Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. *See* (AR 27).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. *See* 20 C.F.R. §§ 404.1545, 416.945. On this point, the ALJ concluded:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). The claimant can occasionally balance, stoop, kneel, and crouch. The claimant cannot climb or crawl. The claimant can frequently handle, finger, and reach. The claimant should avoid concentrated exposure to extreme cold, extreme

**MEMORANDUM DECISION & ORDER - 5**

heat, humidity, vibrations, pulmonary irritants, and hazards. The claimant can work in very quiet to moderate noise intensity levels, as those terms are defined in the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO). The claimant can perform simple, routine tasks and follow short, simple instructions. The claimant can do work that needs little or no judgment and can perform simple duties that can be learned on-the-job in a short period.

(AR 28).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). Here, the ALJ found that Petitioner is unable to perform any past relevant work but that, considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform, including barista, storage rental clerk, final assembler, and document preparer. *See* (AR 35-36). Therefore, the ALJ concluded that Petitioner "has not been under a disability, as defined by the Social Security Act, from July 15, 2013, through the date of this decision." (AR 36).

**B.    Analysis**

    1.    <u>The ALJ Fulfilled His Duty to Develop the Record</u>

"In Social Security cases, the ALJ has a special duty to fully and fairly develop the record and to assume that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). This duty exists when the claimant is represented by counsel, or when appearing *pro se*. *See Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996). Such a duty is only triggered when there is "ambiguous evidence" or the ALJ has found "the record inadequate to allow for proper evaluation of the evidence." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)

**MEMORANDUM DECISION & ORDER - 6**

(quoting *Smolen*, 80 F.3d at 1288). Here, Petitioner suggests that the ALJ's Decision was unreasonable, in part, because he did not have the opportunity to review all of the medical evidence prior to the February 11, 2016 hearing. *See* Pet.'s Brief, pp. 1-2 (Dkt. 16) ("Brief in Support of Petition will show cause as to why Judge Kennedy's judgment should not be upheld and that based on medical evidence, clarification of medical records, *and lack of records that the judge had before the hearing* give reason to not uphold his Unfavorable decision. . . . . [Attorney Ratliff] was scolded by Judge Kennedy for failure to have all my medical records sent to him for review before the hearing. Judging/Hearing proceedings without prior review of medical records would be difficult and I find the ruling of Judge Kennedy unreasonable. . . . . Medical records were not reviewed by the judge before the hearing.") (emphasis added). This argument does not supply a basis for remanding the action.

At the beginning of the hearing, the ALJ carefully discussed the state of the existing administrative record with Petitioner's attorney, engaging in the following back-and-forth:

> ALJ: Good afternoon. Let's take a look at our record and see what we have in the file so far. 1-A to 4-A, 1-B to 10-B, 1-D to 5-D, 1-E to 15-E, 1-F to 29-F.
>
> Have you had an opportunity to examine these exhibits?
>
> ATTY: Yes, Judge.
>
> ALJ: Are there any objections?
>
> ATTY: None.
>
> ALJ: All right. Being no objection, I'll admit the documents into evidence.
>
> ATTY: I'm assuming you've [received] this morning's submission from [Kadlec], and the Winding Waters Clinic?
>
> ALJ: I would never assume anything. So are you telling me that you submitted something this morning?

| | |
|---|---|
| ATTY: | We just got some records this morning and yesterday afternoon that we submitted in. |
| ALJ: | I see two submissions. When were these records requested? |
| ATTY: | Early January |
| ALJ: | And what time period do these records cover? |
| ATTY: | They should cover the time period since their alleged onset date to the present. |
| ALJ: | Do these records cover over three years? |
| ATTY: | Well, let's double-check. I'm seeing them back to 2013, Judge. |
| ALJ: | All right. I'm just curious. I'm trying to understand how I'm supposed to prepare for a hearing when records that could have been obtained months ago that cover a three-year period they're submitted the morning of the hearing, so I'm just trying to understand how I'm expected to prepare for a hearing when evidence covering a lengthy period of time is submitted at the last minute. |
| ATTY: | Sure, Judge. It's always a balance. We have to make sure we get the most complete record for you, and not missing any recent records, and, of course, we have an Oregon law where we get the free records one time, and so we try to get them as close in time to the hearing as we can. Obviously, getting them to you the morning of [the hearing] is not the best thing, but we've requested them a month or so ago, and we've just gotten some of them. |
| ALJ: | Let me ask you this because some of the records I reviewed in the file contained redactions. Can you tell me what's going on with these redactions? |
| ATTY: | No, Judge, I'd have to look at the redactions you're looking at, and guess, and we asked for complete records, and sometimes we get redacted copies. |
| ALJ: | So you don't know who redacted them, or is that how they – how you received them? |
| ATTY: | That's how we received them. We provide the records to you as we get them from the providers. |

**MEMORANDUM DECISION & ORDER - 8**

| | |
|---|---|
| ALJ: | Okay. At 27-F there are tons of pages with redactions. Page 80, 90, 91, 146, 147. I mean, I could continue listing on and on and on, and I don't know what was redacted, I don't know who redacted it. |
| ATTY: | Judge, I'm happy to contact those providers and request unredacted copies. |
| ALJ | I don't – do you have any idea what that might be that was redacted? |
| ATTY: | I do not, Judge. |
| ALJ: | Okay. All right. Well, we'll work with that. So the exhibits you submitted will be 30 and 31-F. Are there any other outstanding requests for evidence? |
| ATTY: | No, Judge. |
| ALJ: | I am required to remind you and the claimant that you must inform me about, or submit, in its entirety all evidence whether it's favorable or unfavorable known to you that relates to whether or not the claimant is blind or disabled. I'm required to remind the representative that he or she must help the claimant obtain the information claimant must submit. Counsel, are you aware of any additional evidence that relates to whether or not the claimant is blind or disabled? |
| ATTY: | No, Judge. We've attempted to provide you with a complete comprehensive set of records as we could obtain. |

(AR 46-49). In doing this, the ALJ confirmed that he had the complete record informing

Petitioner's disability claim. The result is a complete and fully developed record from which the

ALJ issued his Decision.[1]

---

[1] Also relevant is the fact that the ALJ explicitly referenced at the outset of his Decision both (1) the newly-submitted medical evidence, and (2) the extensive redactions, indicating his complete consideration of both issues addressing Petitioner's disability claims:

> At the hearing, I noted redactions in some of the records, *e.g.*, 27F and 28F. I asked the attorney about the redactions and he stated that is how he received the documents. *After the hearing, I reviewed Exhibits 30F and 31F, which were*

**MEMORANDUM DECISION & ORDER - 9**

2. <u>The ALJ's Findings at Step Two of the Sequential Process Were Reasonable</u>

As indicated above, the second step of the sequential process requires a determination of whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. *See supra* (citing 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii)). With this in mind, the ALJ found that Petitioner has the following severe impairments: "rheumatoid arthritis; syrinx of the spine; right carpal tunnel syndrome; headaches; infraspinatus tendon tear of the right shoulder; [and] hypothyroidism." (AR 23). Though Petitioner does not disagree that she suffers from each of these impairments,[2] she nonetheless argues that the list is incomplete by taking issue with the ALJ's simultaneous findings that her fibromyalgia, irritable bowel syndrome, and depression and anxiety[3] were not similarly severe. *See* Pet.'s Brief, pp. 2-5 (Dkt. 16) ("I disagree with the Judgment here because this is not the full list of my impairments that were presented in my medical records nor were these impairments properly clarified or explained nor were they taken as a combination of

---

    *submitted the day of the hearing*. I noticed in Exhibit 30F2 that there was a stamp at the top right corner, indicating that confidential information was not released. At Exhibit 30F3, under section 3, it appears that the claimant did not authorize the release of information regarding her HIV, genetic, and DAA status, and that is the information that was redacted. Exhibit 20E (which was received after the hearing) confirms this conclusion. *Because the case does not involve these areas, I am not further developing/re-requesting the documents*. Incidentally, Exhibits 27F and 28F did not contain the release authorization form and cover letters; hence, I was unable to determine the reasons for the redactions prior to the hearing.

(AR 21) (emphasis added).

   [2] Even so, Petitioner disagrees with the terminology employed by the ALJ in identifying some of them in the Decision. *See, e.g.*, Pet.'s Brief, pp. 4-5 (Dkt. 16) (arguing that she suffers from Hashimoto's Disease (not hypothyroidism) and migraine headaches (not headaches)).

   [3] Within Petitioner's August 22, 2013 "Disability Report- Adult" (completed roughly one month after the July 15, 2013 alleged onset date), Petitioner does not list either fibromyalgia or irritable bowel syndrome as a physical condition that limits her ability to work (depression *is* listed). *See* (AR 190).

**MEMORANDUM DECISION & ORDER - 10**

impairments combined together to warrant my claim that I am disabled and should receive Social Security Benefits.").[4]

It is true that the ALJ did not consider such additional impairments severe. However, this is not to say that Petitioner does not suffer from such impairments at all, or that the ALJ did not consider them in the context of Petitioner's claims; indeed, the ALJ contrasted each of these conditions (and others) against the balance of the medical record before concluding that they did not significantly limit Petitioner's ability to perform basic work activities and, thus, were more appropriately classified as non-severe. *See* (AR 24-27).

For example, the ALJ acknowledged that "[t]he record contains references to fibromyalgia," but ultimately concluded that the evidence failed to diagnostically establish Petitioner's alleged fibromyalgia as a medically determinable impairment pursuant to Social Security Ruling 12-2p. *See* (AR 25) ("Following a thorough review of the entire evidentiary record, I find that the claimant's diagnosis of fibromyalgia fails to satisfy the above criteria. While Dr. Lim and Dr. Sibley reported that the claimant had positive tender points on examination, both failed to document the specific tender points or establish that the claimant had the requisite number of positive tender points to meet the diagnosis of fibromyalgia. I note that when seen by Dr. Peacock in March 2015, the claimant had only 8 positive tender points out of the 18. Additionally, neither Dr. Lim nor Dr. Sibley ruled out other conditions that could cause the claimant's symptoms. I note that in May 2014, Dr. Flinders opined that many of the claimant's symptoms were likely related to her syrinx."). Similarly, as to Petitioner's alleged irritable bowel syndrome, the ALJ noted her limited reports of diarrhea and weight loss in

---

[4] Petitioner does not actually cite to any medical evidence in the record that establishes that she suffers from these impairments or, for that matter, that such impairments impact her ability to perform work activities to the point that she is unable to do so and therefore qualifies as disabled.

**MEMORANDUM DECISION & ORDER - 11**

January 2016 (and in December 2013 "when she experienced transient issues of diarrhea due to the start of Plaquenil"), before pointing out the "frequent denials of diarrhea and other gastrointestinal problems from 2012 through 2015." (AR 24) (citing (AR 578, 582, 631, 665-666, 670, 775, 784, 789, 828, 831, 837, 856)); *see also* (AR 24) (ALJ stating: "When considering also that the claimant was not even taking any medication for irritable bowel syndrome until her recent exacerbation in January 2016, I find that her condition is non-severe."). Finally, the ALJ recognized Petitioner's "longstanding history of depression and anxiety," but found that it did not prevent her from working for many years in a skilled job as a dental hygienist; was tied to situational stressors involving her ex-husband, legal custody issues, and ongoing pregnancy; and has generally been stable with medication and counseling. (AR 26) (citing (AR 553-554, 557-560, 578, 1111, 1134)).[5]

In sum, it is not accurate to say – as Petitioner implies is the case here – that the ALJ ignored the entirety of Petitioner's impairments when he considered some (but not all) of them to be severe. Simply put, an unadorned diagnosis neither equates to a severe impairment, nor amounts to a disability from which benefits attach. *See Febach v. Colvin*, 580 Fed. Appx. 530, 531 (9th Cir. 2014) ("Although [claimant] was diagnosed with depression, that diagnosis alone is insufficient for finding a severe impairment[.] . . . There was sufficient evidence . . . for the ALJ to conclude that [his] depression is not 'severe,' including reports by at least three of [his] physicians suggesting that his impairment is 'non-severe.'"). In considering the longitudinal

---

[5] Despite concluding that Petitioner's fibromyalgia, irritable bowel syndrome, and depression/anxiety were not severe, the ALJ still considered *all* of Petitioner's physical and mental symptoms in his assessment of Petitioner's RFC. *See* (AR 25, 27); *see also Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998) (ALJ must assess all relevant evidence, including evidence regarding symptoms that are not severe, to determine if claimant retains ability to work on regular and continuing basis). In doing so, the ALJ limited Petitioner to light jobs with restrictions commensurate with her various severe and non-severe impairments. *See* (AR 28-35). Petitioner has not articulated why such restrictions inadequately account for her conditions.

**MEMORANDUM DECISION & ORDER - 12**

medical record, the ALJ provided sufficient reasons for differentiating between those impairments that significantly limit her ability to perform basic work activities, and those that do not.[6] While there may be space to argue that that the ALJ was incorrect in doing so, his analysis is supported by substantial evidence and based on proper legal standards.

   3.   The ALJ Reasonably Evaluated the Opinion Evidence

The ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *See Magallanes*, 881 F.2d at 750. While the medical opinion of a treating physician is entitled to special consideration and weight, it is not necessarily conclusive. *See Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989). If the treating physician's opinions are not contradicted by another doctor, they may be rejected only for clear and convincing reasons. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Even if the treating physician's opinions are contradicted by another doctor, they can only be rejected if the ALJ provides specific and legitimate reasons for doing so, supported by substantial evidence in the record. *See id*. A lack of objective medical findings, treatment notes, and rationale to support a treating physician's opinions is a sufficient reason for rejecting that opinion. *See*

---

[6] Petitioner relatedly argues that, at step three of the sequential process, the ALJ incorrectly concluded that her rheumatoid arthritis, though severe, did not meet or medically equal the severity of Listing 14.09C because she does not have ankylosing spondylitis. *See* Pet.'s Brief ISO Pet. for Review, p. 4 (Dkt. 16) ("The Judgment states on pg. 8 of 16 that I do not meet 14.09C because I do not have ankylosing spondylitis. This is incorrect. I DO have a diagnosis of Ankylosing Spondylitis also diagnosed as psoriatic spondylitis or psoriatic arthritis as its umbrella."). Except, again, Petitioner's general references to the medical record are not enough and, regardless, are neither substantiated nor appear to support her claim in the context of the ALJ's conclusions. *Compare, e.g.*, (AR 747, 749) (Dr. Flinders stating: "I do believe that a number of her vague symptoms are likely related to the Syrinx"; and "Severe back and neck pain most likely related to expanding syrinx."), *with* (AR 23) (ALJ concluding Petitioner's "syrinx of the spine" to be severe). Besides, in a letter to the ALJ immediately following the February 11, 2016 hearing, Petitioner outlined her "health issues, as well as how they may be defined as a disability under the list of medical conditions set forth by the Social Security Administration." (AR 268-273). Interestingly, Petitioner indicates that her rheumatoid arthritis meets Listings 14.09A, 14.09B, and 14.09D, *but makes no reference to 14.09C*. *See* (AR 269).

**MEMORANDUM DECISION & ORDER - 13**

*Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Additionally, the ALJ may discount physicians' opinions based on internal inconsistencies, inconsistencies between their opinions and other evidence in the record, or other factors the ALJ deems material to resolving ambiguities. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).

Here, Petitioner disagrees with the ALJ's determination that she is able to perform light work (with certain restrictions necessitated by here severe impairments), arguing instead that the Court should "listen to [her] doctors, consider the combination of impairments, see [her] as a whole picture with a list of chronic health problems and not of the [ALJ's] who [has] taken his opinion from unreliable blood work results,[7] which provide little or no evidence of how [she] actually feel[s] and function[s]." Pet.'s Brief ISO Pet. for Review, p. 6 (Dkt. 16). Petitioner specifically takes issue with the lack of weight given to the opinion of Drs. Renee Grandi and Elizabeth Powers. *See id*. Each of these arguments is addressed below.

    a.    Dr. Grandi

On November 8, 2012, Petitioner's treating physician, Dr. Grandi, indicated that she "believe[d] at this time [Petitioner] is disabled and unable to work productively." (AR 384). The ALJ properly gave this opinion only "little weight." (AR 32). First, the opinion predated Petitioner's July 15, 2013 alleged onset date. The Ninth Circuit has held that medical reports

---

[7] This statement appears to be made generally, although could be interpreted as applying more specifically to Petitioner's rheumatoid arthritis. *See* Pet.'s Brief ISO Pet. for Review, pp. 5-6 (Dkt. 16). And, while the ALJ *did* point out how laboratory tests since the alleged onset date "have demonstrated rheumatoid factors within the normal range," the ALJ also noted that "imaging studies have been relatively unremarkable" and that "physical examinations do not fully corroborate the claimant's allegations." (AR 29-30) (observing that Petitioner has "demonstrated that she retains full range of motion"; "5/5 motor strength"; "normal reflexes in her arms and legs"; largely normal sensory functions; "no signs of edema in her extremities"; and "has routinely shown a normal gait and no difficulties in her ability to ambulate during appointments").

**MEMORANDUM DECISION & ORDER - 14**

which predate the alleged date of onset are of limited relevance. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). Moreover, Dr. Grandi failed to connect any dots supporting her apparent conclusion that Petitioner's rheumatoid arthritis (identified as the "primary encounter diagnosis"), in and of itself, precludes full-time work. *See Bayliss*, 427 F.3d at 1216 (ALJ not required to accept medical opinion that is brief, conclusory, or inadequately supported by objective findings).[8] Without more, one does not *ipso facto* equal the other. Combined, these realities represent sufficient reasons for rejecting Dr. Grandi's opinion on what amounts to a disability determination. *See Rodriguez*, 876 F.2d at 762 (treating or examining physician's opinion on the ultimate issue of disability not conclusive); *see also* SSR 96-5p, 1996 WL 374183, *2 ("The regulations provide that the final responsibility for deciding [whether an individual is 'disabled' under the Act] . . . is reserved to the Commissioner."); *see also infra* (discussing additional reasons, presented in context of Dr. Powers's opinions, for also questioning Dr. Grandi's opinions).

      b.     Dr. Powers

On January 18, 2016, Petitioner's treating physician, Dr. Powers completed a (1) "Form Medical Opinion Re: Ability to Do Work-Related Activities," and (2) "Mental Impairment Questionnaire." (AR 1038-1045). Dr. Powers diagnosed Petitioner with chronic migraine headaches, rheumatoid arthritis, fibromyalgia, major depressive disorder, cognitive impairment, and chronic degenerative disc disease of the cervical and lumbar spine. *See* (AR 1039). Dr. Powers further concluded that Petitioner was limited to (1) lifting/carrying less than 10 pounds; (2) standing and walking less than two hours in an eight-hour workday; and (3) sitting less than

---

[8] This is particularly the case when, after November 2012, Petitioner was able to work and earned $12,388.00 as a dental hygienist in 2013. *See* (AR 176); *see also* (AR 32) (ALJ stating: "While part-time, her earnings nonetheless exceeded the presumed level of substantial gainful activity during her 7 months of work.").

**MEMORANDUM DECISION & ORDER - 15**

two hours in an eight-hour workday. *See* (AR 1038); *see also* (AR 1040) (discussing work-related activities affected by Petitioner's alleged impairments: "cognitive impairment related to headaches; chronic pain; decreased right hand grip strength with associated decreased sensation; gait instability"). Owing to these limitations, Dr. Powers opined that Petitioner would miss more than three days of work per month. *See* (AR 104). Additionally, Dr. Powers opined that Petitioner's mental impairments would cause marked limitations in activities of daily living, extreme limitation in social functioning, constant deficiencies of concentration, persistence, or pace, and repeated episodes of decompensation – contributing, again, to Petitioner having to miss more than three days of work per month. *See* (AR 1044-1045). At bottom, Dr. Powers believed that Petitioner would have difficulty working at a regular, full-time job on a sustained basis. *See* (AR 1044) ("Currently incapacitated by pain, headaches or cognitive impairment at least two days per week. On these days, she is house-bound."). The AL gave "little weight" to Dr. Powers's opinions. *See* (AR 33). The undersigned agrees.

First, owing to the very nature of Petitioner's impairments, Dr. Powers's opinions are largely driven by Petitioner's own subjective complaints (*see* (AR 797) (treatment note from 1/18/16 visit with Dr. Powers: "Has some paperwork that she would like Dr. Powers to sign . . . has filled it out somewhat on her own"))[9] which the ALJ rejected as not credible (*see* (AR 29)) and which Petitioner does not contest here. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ may reject treating doctor's opinion if it is based "to a large extent" on claimant's self-reports that have been properly discounted as not credible). Absent any

---

[9] Petitioner also testified during the February 11, 2016 hearing that, prior to Dr. Powers signing the medical source statements, she and Dr. Powers sat down and walked through the form, with Dr. Powers asking Petitioner what she thought her limitations were and they discussed what she could do. *See* (AR 58-61). According to the ALJ, "[t]he claimant thus appears to have directly influenced the content of Dr. Powers's medical source statement, which raises questions about its objectivity and reliability." (AR 33).

**MEMORANDUM DECISION & ORDER - 16**

legitimate moorings to substantiate Dr. Powers's opinions on these points, they are revealed as overly vague and speculative. *See Bayliss*, 427 F.3d at 1216.

Second, to the extent Dr. Powers's opinions concerning Petitioner's limitations are premised (at least in part) on her fibromyalgia, degenerative disc disease, and depression, the ALJ recognized that the record does not provide such foundational support. As already stated, the ALJ concluded at steps two and three of the sequential process that Petitioner's fibromyalgia and depression do not rise to the level of medically determinable impairments. *See supra* (citing (AR 24-27)); *see also* (AR 33-34). Separately, there is no evidence of any degenerative disc disease. *See* (AR 33) ("The claimant, however, has never undergone radiographic workup of the lumbar spine, and an MRI of the cervical spine in July 2014 showed no evidence of degeneration in any of the disc spaces, including no signs of herniation or stenosis.") (citing (AR 777)).[10] Therefore, where Dr. Powers's opinions rely upon the existence of such predicate impairments, they are necessarily undercut. *See Bayliss*, 427 F.3d at 1216; *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings.") (internal citations omitted).[11]

Third, Dr. Powers's opinions do not neatly align with the balance of the medical record. For example, the ALJ referenced the fact that (1) despite Petitioner's synovitis of her hands and

---

[10] In addition to not listing fibromyalgia and irritable bowel syndrome (*see supra*), Petitioner's August 22, 2013 "Disability Report – Adult" also did not list degenerative disc disease as a physical condition that limits her ability to work. *See* (AR 190).

[11] At the same time, he Court disagrees with the ALJ's challenge to Dr. Powers's reliance upon Petitioner's migraine headaches, particularly where the ALJ himself recognized Petitioner's migraine headaches as constituting a severe (though admittedly not a medically determinable) impairment. *Compare* (AR 33) (ALJ stating: "A review of the contemporaneous medical records in 2015, however, indicates the claimant's headaches are not as chronic as she reports."), *with* (AR 23) (ALJ identifying Petitioner's headaches as severe).

**MEMORANDUM DECISION & ORDER - 17**

feet at times, x-rays "have consistently demonstrated no evidence of erosion or degenerative changes"; (2) Petitioner "has regularly shown, on physical examinations, that she retains good range of motion, normal reflexes, 5/5 motor strength, including 5/5 grip strength, and intact sensation throughout all her extremities"; (3) Petitioner has "routinely shown a normal gait and no difficulties in her ability to ambulate during appointments"; and (4) Petitioner had a Global Assessment of Functioning ("GAF") score of 65[12] and scored a 30 out of 30 on a mental examination. *See* (AR 33-34) (citing (AR 528, 639, 680, 731, 747, 749, 757, 760, 776, 784, 790, 828, 843, 848, 885, 972, 1041, 1042, 1180)). In this sense, Dr. Powers's restricting opinions do not exist in isolation, with state agency medical consultants, Dr. Neal Berner and Dr. Richard Alley, acknowledging Petitioner's above-referenced abilities and opining that Petitioner could actually perform a full range of light work. (AR 34) (citing (AR 95-105, 107-121)).[13]

Finally, the Court notes (as did the ALJ) that Petitioner's daily activities are largely inconsistent with a finding of disability. For instance, the ALJ commented:

> Dr. Powers's opinion is inconsistent with the claimant's activities. For example, Dr. Powers indicated that the claimant could lift less than 10 pounds. the claimant, though, has had no problems breastfeeding either of her two infant children, each of whom weighs more than 10 pounds, or to exercise with weights. Dr. Powers indicated that the claimant could not sit for more than 15 minutes at a time. The claimant, however, was previously able to drive from her home in Lostine to La Grande to pick up her two teenage children from her ex-husband, which is about a 50-mile drive one way and would require the claimant to sit for prolonged periods. Her only apparent limitation with driving at that time was that she was pregnant.

---

[12] "A GAF of 61-70 indicates '[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasionally truancy, or theft within the household), but generally functioning pretty well, with some meaningful interpersonal relationships.'" *Tagger v. Astrue*, 536 F. Supp. 2d 1170, 1174 n.8 (C.D. Cal. 2008); *see also* DSM-IV-TR 34 (4th ed. text rev.).

[13] The ALJ gave "significant weight" to Dr. Berner's and Dr. Alley's opinions "because they are generally consistent with the longitudinal record." (AR 34). Still, recognizing that Petitioner developed new conditions since their review of the file (small tear in the right shoulder and right carpal tunnel syndrome), the ALJ's RFC analysis specifically accommodated the claimant by limiting her to frequent handling, fingering and reaching. *See id*.

**MEMORANDUM DECISION & ORDER - 18**

> Additionally, Dr. Powers indicated that the claimant could not walk for more than 5 minutes at a time. This restriction, however, appears inconsistent with the references to the claimant hiking or walking daily for exercise.

(AR 34) (citing (AR 451, 525, 572, 825, 837)). An ALJ may discount the medical opinion where the prescribed restrictions were inconsistent with the level of activity maintained by a claimant. *See, e.g.*, *Lee v. Berryhill*, 2017 WL 6629018, *1 (9th Cir. 2017) (finding that ALJ provided specific and legitimate reasons to reject examining physician's opinions where claimant's "daily activities [were] inconsistent with [the physician's] conclusion that [the claimant] cannot work"); *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (where claimant "indicated that she was able to take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries," court found that "[a]n ability to perform such activities may be seen as inconsistent with the presence of a condition which would preclude all work activity").

The Petitioner suffers from several impairments (acknowledged as "severe" by the ALJ (*see* (AR 23)) that impact her ability to work; however, the ALJ provided clear and convincing reasons for rejecting/questioning Dr. Grandi's and Dr. Powers's opinions. These opinions were not given the weight Petitioner argues that they deserved, but such opinions clearly were considered in the context of the surrounding medical record. The Court's duty here is not to ultimately decide whether Petitioner is once-and-for-all disabled as that term is used within the Social Security regulations. Rather, this Court must decide whether the ALJ's decision that Petitioner is not disabled is supported by the record. In this record, there are opinions, testimony, and accounts that inform the ALJ's decisions on how to consider Petitioner's claims. His decision to discount these doctors' opinions is supported by clear and convincing, specific, and legitimate reasons. Hence, because the evidence can reasonably support the ALJ's conclusions in these respects, this Court will not substitute its judgment for that of the ALJ's even if this

**MEMORANDUM DECISION & ORDER - 19**

Court were to have a different view. *See Richardson*, 402 U.S. at 401; *Matney*, 981 F.2d at 1019.

## IV. CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ. *Key*, 754 f.2d at 1549.

The evidence relied upon by the ALJ can reasonably and rationally support the ALJ's well-formed conclusions, despite the fact that such evidence may be susceptible to a different interpretation. Accordingly, the ALJ's decisions as to Petitioner's disability claim were based on proper legal standards and supported by substantial evidence. Therefore, the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

The Commissioner's decision is affirmed.

## V. ORDER

Based on the foregoing, IT IS HEREBY ORDERED that the decision of the Commissioner be AFFIRMED and that this action be DISMISSED in its entirety with prejudice.

DATED: September 12, 2019

B. Lynn Winmill
U.S. District Court Judge

**MEMORANDUM DECISION & ORDER - 20**